UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Robert P. Hull and
Stephen D. Hellwig,
      Plaintiffs

      v.                              Civil No. 09-cv-279-SM
                                      Opinion No. 2010 DNH 001
John J. Barthelmes,
Commissioner, New Hampshire
Department of Safety; and
Virginia C. Beecher, Director,
New Hampshire Division of
Motor Vehicles, Department
of Safety,
      Defendants


**O R D E R**


Plaintiffs Robert Hull and Stephen Hellwig challenge the New Hampshire Division of Motor Vehicles' apparent practice of waiting until drivers apply for license renewal to inform them that information in the National Driver Registry precludes renewal.  The National Driver Registry maintains a problem driver "pointer system," and adverse information about a driver in that system is relied upon by the State to deny license renewal — which can pose a serious problem when a driver first learns of an issue as his or her license is about to expire.  And, when the information is wrong, or misattributed (bureaucracies being what they are), the imposition and attendant frustration can be magnified.  Before the court are defendants' motion to dismiss and plaintiffs' motion for a hearing.  Both motions are opposed.

Although oral argument has been requested, it would not prove helpful since the dispositive issues are limited in scope and have been fully and capably briefed by both sides.

## Background

The relevant facts, drawn from plaintiffs' complaint, are as follows.

In 2004, Robert Hull became a New Hampshire resident.  He obtained a New Hampshire driver's license from the Division of Motor Vehicles ("DMV"), in the process surrendering his New Jersey driver's license.  In 2008, approximately two weeks before his New Hampshire license was due to expire, Hull went to a DMV office to renew it.  He was not permitted to do so.  Rather, he was issued a "PDPS Problem Announcement" which stated:

> We are sorry, but our system indicates that your
> operating privileges are under suspension in another
> state.  We cannot issue you a license until this matter
> has been resolved and cleared from our system by the
> suspending state.  You may contact our Bureau of
> Financial Responsibility at 23 Hazen Drive in Concord
> and they will help determine the nature of the problem
> and advise you what steps to take.

(Def.'s Mot. to Dismiss, Ex. A, at 9.)  The Problem Announcement listed New Jersey as the "Problem State," along with a reference number and a New Jersey telephone number.  When Hull tried to pursue the matter with the DMV, he was told that he would have to

resolve it in New Jersey, as New Hampshire (and presumably other states) accept the registry information as presumptively valid. After retaining legal counsel in New Jersey, Hull was able to have the meritless suspension of his New Jersey driving privileges lifted, and the notation in the pointer system purged.[1]  Approximately four months after his New Hampshire license expired, he was finally issued a new one.

Stephen Hellwig also went to a DMV office to renew his New Hampshire license, some five weeks before it was to expire.  A DMV representative told him he could not renew his license due to an adverse notation in the pointer system, entered by the Commonwealth of Massachusetts.  Hellwig was without a driver's license during the ensuing five and a half months required to resolve the problem in Massachusetts.

---

[1] The problem in New Jersey involved license suspensions, in 2007 and 2008, apparently for failure to obtain a certificate of occupancy for apartments located at a property Hull once owned. Hull characterizes the problem as bureaucratic blundering: "a municipality in which [he] did not live suspended a New Jersey driver's license he did not have, for [an unrelated regulatory] violation [associated with] a building that he did not own." (Compl. ¶ 5.)  Hull's displeasure over the impact in New Hampshire of his dubious New Jersey license suspensions is understandable.  Whether such blundering rises to the level of a federal constitutional violation, however, is another question altogether.

Plaintiffs' complaint does not disclose, but the court acknowledges, the following facts. Shortly after the DMV declined to renew his license, Hull filed a petition in the New Hampshire Superior Court seeking declaratory[2] and injunctive relief.[3] The Superior Court denied Hull's requests for relief, and the New Hampshire Supreme Court affirmed.

While Hull's appeal to the state Supreme Court was pending, he filed a second petition in the Superior Court, alleging that the Department of Safety failed to fulfill its responsibilities under the New Hampshire Right-to-Know Law, N.H. REV. STAT. ANN. ch. 91-A, and seeking declaratory and injunctive relief that would bar New Hampshire's participation in National Driver Registry, as well as its reliance on the pointer system. The Superior Court denied all of Hull's requests for relief, and that order is currently on appeal to the New Hampshire Supreme Court.

---

[2] He sought declarations that the DMV violated the law by: (1) refusing to renew his driver's license based on information in the pointer system; (2) denying his request for information in the pointer system; and (3) refusing to renew his driver's license. (Def.'s Mot. to Dismiss, Ex. A, at 6-7.)

[3] He asked the court to enjoin the DMV from: (1) continuing to refuse renewal of his driver's license; (2) denying license renewal based on information in the pointer system; (3) denying requests for information in the pointer system; and (4) denying renewal of his driver's license based on information in the pointer system. (Def.'s Mot. to Dismiss, Ex. A, at 7.)

4

In this court, Hull and Hellwig seek relief based upon alleged violations of their federal constitutional rights to due process.  In Count I, they assert that "[t]he processes, procedures, policies, regulations, statutes and practices by which the Defendants determine and implement refusals to renew motor vehicle operator's licenses by reason of notations in [the pointer system] are unconstitutionally vague . . . in violation of the Due Process requirements of the United States Constitution."  (Compl. ¶ 67.)  Count II asserts that "[n]otice and [a] right to be heard prior to the DMV denying New Hampshire residents renewal of their motor vehicle operator's licenses is a requirement arising out of a fundamental right . . . under the United States Constitution" (id. ¶ 73), and that defendants violated that right (id. ¶ 74).[4]  Count III asserts:

> The processes, procedures, policies, regulations, statutes and practices of the Defendants in denying renewal of motor vehicle operator's licenses, based upon entries by foreign jurisdictions of information in the Problem Driver Pointer System, unconstitutionally deny the public, the Plaintiffs and every member of the class of which Plaintiffs are representative of the right to a hearing on charges upon which the Defendants rely in denying renewal of the motor vehicle operators licenses.

(Id. ¶ 77.)

---

[4] The wording of Count II makes it somewhat difficult to determine whether plaintiffs are raising a substantive due-process claim or a procedural due-process claim.

The heart of plaintiffs' case appears to be their contention that the Due Process Clause of the national constitution "requires that a holder of a New Hampshire driver's license receive notice of any information reported from the [pointer system] that would result in denial of that licence's renewal sufficiently in advance of the renewal deadline to enable the holding, upon request, of an administrative hearing in which to contest it." (Pl.'s Memo. of Law (document no. 5), at 2.)  While it is not clear, plaintiffs also appear to claim the right to a hearing in New Hampshire, at which the validity of out-of-state license suspensions may be contested.

Finally, the caption of the complaint suggests that Hull and Hellwig are suing both on their own behalf and as representatives of a class of similarly situated individuals.  But they have not moved for class certification, and no plaintiff class has been certified.

### Discussion

Defendants argue that they are entitled to dismissal based on the Rooker-Feldman doctrine, principles of res judicata, the Younger abstention doctrine, and plaintiffs' lack of standing (and/or mootness).  They also seek dismissal on the merits. Plaintiffs disagree, categorically.  Having carefully considered

the parties' briefs, the court concludes that defendants are entitled to dismissal, based on plaintiffs' lack of standing, and, additionally, to dismissal of Hull's claims on <u>res judicata</u> grounds.

## A. Standing/Mootness

Defendants point out that both plaintiffs resolved their out-of-state issues and successfully renewed their New Hampshire driver's licenses, so lack standing to pursue these claims, and/or that their claims are now moot.[5]  Plaintiffs disagree, but offer no supporting analysis.

"The 'irreducible constitutional minimum of standing contains three elements': (1) that the plaintiff suffered an 'injury in fact,' (2) that there is a 'causal connection between the injury and the conduct complained of,' and (3) that it is 'likely' that the injury will be redressed by the requested relief."  <u>Sutliffe v. Epping Sch. Dist.</u>, 584 F.3d 314, 325 (1st Cir. 2009) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)).  In addition, "[t]he burden of stating facts

---

[5] Defendants argue both standing and mootness in that section of their brief devoted to standing.  As the court of appeals has pointed out, standing and mootness are closely related concepts.  <u>See</u> <u>Ramírez v. Sánchez Ramos</u>, 438 F.3d 92, 97 (1st Cir. 2006) ("mootness is aptly described as 'the doctrine of standing set in a time frame' ") (quoting <u>U.S. Parole Comm'n v. Geraghty</u>, 445 U.S. 388, 397 (1980)).

sufficient to support standing rests with the party seeking to assert federal jurisdiction." Sutliffe, 584 F.3d at 325 (quoting Sea Shore Corp. v. Sullivan, 158 F.3d 51, 54 (1st Cir. 1998)).

Assuming, for the sake of argument, that plaintiffs continue to suffer from constitutionally cognizable injuries in fact, and have adequately pled a causal connection between their injuries and the conduct they complain of, their claims still founder on the third element, redressability.  Because plaintiffs both now hold renewed driver's licenses – and had them at the time they filed suit – their cognizable injury is not that they are deprived of licenses, but that they had to do without licenses during the time it took to resolve their out-of-state problems. The declaratory or injunctive relief plaintiffs seek, however, will not redress that injury.  Accordingly, they lack standing to bring the claims raised in this suit.[6]  Moreover, their claims

---

[6] To the extent plaintiffs contend that the situation they seek to remedy is "capable of repetition yet evading review," an exception to the mootness doctrine, not the standing requirement, see Horizon Bank & Trust Co. v. Massachusetts, 391 F.3d 48, 54 (1st Cir. 2004), that exception does not apply in this case. There is no demonstrated probability that either Hull or Hellwig will again suffer because of meritless entries in the pointer system of which they are unaware.  See United States v. Reid, 369 F.3d 619, 626-27 (1st Cir. 2004) (the "capable of repetition, yet evading review" exception applies only if "there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again") (quoting Spencer v. Kemna, 523 U.S. 1, 17 (1998)) (emphasis added).  Hull and Hellwig are actually (as well as constructively) aware of the DMV's policies and procedures, so there is no reason to think they will again be

also seem to run afoul of "the rule [of prudential standing]
barring adjudication of generalized grievances more appropriately
addressed in the representative branches." <u>Nulankeyutmonen
Nkihtaqmikon v. Impson</u>, 503 F.3d 18, 26 (1st Cir. 2007) (quoting
<u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984)).

Plaintiffs suggest that the court would benefit from having
the parties address "the holdings in a number of Circuits that a
person satisfies Article III standing where s/he alleges a
failure to afford required procedures which leaves that person at
risk of suffering a concrete injury in the future." (Document
no. 6, at 3.)  But those authorities are not persuasive in this
context.

First, this is not "a 'procedural rights' case in which a
party 'has been accorded a procedural right to protect his
concrete interests.' " <u>Nuclear Info. & Res. Serv. v. NRC</u>, 509
F.3d 562, 567 (D.C. Cir. 2007) (quoting <u>Lujan</u>, 504 U.S. at 572
n.7)).  Because there is no established procedural requirement
that DMV afford licensed drivers pre-renewal notification of

---

surprised by a PDPS Problem Announcement when renewing their
driver's licenses, particularly given their ability to retrieve
information in the pointer system from the National Driver
Registry.  <u>See</u> N.H. CODE R. Saf-C 1013.03 (describing the
procedure individuals may follow to obtain information from the
pointer system).

information in the pointer system that might preclude license renewal, this is not a case in which plaintiffs have "standing to challenge an agency's failure to follow a procedural requirement." Nuclear Info., 509 F.3d at 567 (citation omitted). Moreover, neither plaintiffs, nor any individuals similarly situated, i.e., those who have had license renewals denied pending resolution of out-of-state licensing issues, are at risk of suffering similar injury in the future. Plaintiffs have resolved their out-of-state issues and are able to access the pointer system before their next renewal date, in sufficient time to resolve any disqualifying notation. In other words, the likelihood of similar problems befalling plaintiffs in the future is not sufficiently concrete to confer standing. As Sutliffe explains, "[i]njury in fact is an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." 584 F.3d at 325 (quoting Lujan, 504 U.S. at 560 (internal quotation marks omitted).

Because the relief plaintiffs seek will not redress the injuries they claim, they lack standing to bring the claims asserted in their complaint.

B. Res Judicata

Defendants also argue that plaintiffs' claims are barred by
the res judicata doctrine, given the result of Hull's first
Superior Court petition.  Plaintiffs counter that: (1) Hellwig
was not a party to Hull's earlier suit; (2) Hellwig's problem
with DMV was entirely unconnected to Hull's, has never been
adjudicated, and could have been brought in this court as a
separate case; (3) this case and Hull's previous case rest on
different factual bases and, consequently, are different causes
of action.  Plaintiffs are correct to a point; Hellwig's claims
are not barred by res judicata, but Hull's claims are.


     "Under federal law, a federal court must give to a state-
court judgment the same preclusive effect as would be given that
judgment under the law of the state in which the judgment was
entered."  Sutliffe, 584 F.3d at 326 (quoting Torromeo v. Town of
Fremont, 438 F.3d 113, 115-16 (1st Cir. 2006) (internal quotation
marks omitted).


          Under New Hampshire law, res judicata "precludes
     the litigation in a later case of matters actually
     decided, and matters that could have been litigated, in
     an earlier action" when the following three elements
     are met: "(1) the parties must be the same or in
     privity with one another; (2) the same cause of action
     must be before the court in both instances; and (3) a
     final judgment on the merits must have been rendered in
     the first action."

11

Sutliffe, 584 F.3d at 327 (quoting Meier v. Town of Littleton, 154 N.H. 340, 342 (2006)).

Here, the first and third elements are plainly satisfied. Hull sued representatives of the New Hampshire DMV in both this case and his earlier state case, on nearly identical grounds, arising from the same operative facts.  That case progressed to the New Hampshire Supreme Court, which rendered a final decision.

Turning to the second element, "New Hampshire law considers two causes of action to be the same for purposes of res judicata when they arise from the same factual transaction." Sutliffe, 584 F.3d at 327 (quoting Patterson v. Patterson, 306 F.3d 1156, 1159 (1st Cir. 2002); citing ERG, Inc. v. Barnes, 137 N.H. 186, 191 (1993)).  Focusing on the presence of constitutional claims in this case that were absent from Hull's earlier state-court suit, plaintiffs contend that "the factual bases of the claims are clearly distinct in the two cases," rendering the two causes of action different and res judicata inapplicable.  That argument is unavailing.

"[T]he New Hampshire Supreme Court has stated that '[c]ause of action' has a broad transaction definition in the res judicata context." Sutliffe, 584 F.3d at 327 (quoting Brzica v. Trs. of

12

Dartmouth Coll., 147 N.H. 443, 455 (2002)).  Here, a side-by-side
comparison of the factual allegations in Hull's earlier state-
court petition and his complaint in this court demonstrates that
the claims are nearly identical.  In both cases, Hull complained
that he was unlawfully denied the opportunity to renew his New
Hampshire driver's license due to a disqualifying notation in the
pointer system.  The complaint in this case adds one new fact —
the DMV's failure to notify Hull of the pointer system notation
before he sought renewal of his license.  But, "[t]he fact that a
second suit contains some additional factual allegations does not
mean it does not arise from the same factual transaction."
Sutliffe, 584 F.3d at 327.  Thus, "[r]es judicata will bar a
second action even though the plaintiff is prepared in the second
action to present evidence or grounds or theories of the case not
presented in the first action."  Id. (quoting Brzica, 147 N.H. at
455-56).

     The bottom line is this.  Hull's earlier state-court
petition and the complaint filed in this case present essentially
the same causes of action, arising from the same operative facts,
and the additional constitutional claims Hull raises here could
have been raised in his earlier state-court case.  The claims
raised in this case, then, are barred by res judicata.  Hellwig's
claims, however, are not barred.  Hellwig was not a party to

13

Hull's earlier state case, and, because no class has been certified, Hull and Hellwig are not in privity.

### Conclusion

For the reasons given, plaintiffs' motion for a hearing (document no. 6) is denied, and defendants' motion to dismiss (document no. 3) is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

January 4, 2010

cc:  William L. O'Brien, Esq.
     Nancy J. Smith, Esq.